Wanamaker, J.
- The plaintiff, for its cause of action, says that it is a corporation duly organized under the laws of the state of Ohio, carrying on a general banking business at Akron, Ohio.
That its cause of action is founded upon a promissory note of which the following 'is a copy, with all credits and the indorsements thereon:
“$2,500.00 Barberton, O., May 16, 1904.-
“Two months after date we promise to pay to the order of ourselves, Twenty-five Hundred Dollars, with interest at-per cent, per annum at'American Nat’l Bank. Value received. “No. 728. Due July 15.
“Tixe Barberton Pottery Co.,
“Per Geo. C. Pryor, Sec.”
Said note is indorsed as follows: The Barberton Pottery Co., Geo. C. Pryor, Sec.; Geo. C. Pryor; Chas. M. Karch; C. IT. Schubert; J. E. Whigan; John McNamara; A. W. Blackburn; A. F. Stuhldreher; B. F. Tracy; Geo. Cox.
There are no credits or indorsements on said note other than as above set forth, except that the interest has been paid up to the 16th day of May, 1906.
*74 Plaintiff says that it is the holder and owner of said promissory note and that the same was delivered to it for value at the time of its execution, and that prior to said delivery to it the defendants, Geo. C. Pryor, Chas. M. Karch, C. H. Schubert, J. E. Whigan, John McNamara, A. W. Blackburn, A. F. Stuhldreher, B. F. Tracy and Geo. Cox signed said note on the back thereof. Plaintiff further says that the Barberton Pottery Company has been since the execution of said note duly adjudged a bankrupt; and that there is due to the plaintiff from the defendants, the Barberton Pottery Company, Geo. C. Pryor, Charles M. Karch, C. IT. Schubert, J. E. Whigan, John McNamara, A. W. Blackburn, A. F. Stuhldreher, B. F. Tracy and George Cox as makers of said note the sum of twenty-five hundred dollars with interest thereon from the 16th day of May, 1905, which it claims and for which it asks judgment.
The defendants, the Barberton Pottery Company, A. W. Blackburn and George C. Pryor are in default for answer or demurrer; and the remaining defendants, Charles M. Karch, C. E. Schubert, J. E. Whigan, John McNamara, A. F. Stuhldreher, B. F. Tracy and George Cox, for their answer to plaintiff’s petition, say, that they admit that the plaintiff is a banking corporation doing business as such at Akron, Ohio, as alleged in the petition. They admit that the note set out in plaintiff’s petition is a correct copy thereof with the indorsements thereon as in said petition alleged, and that the Barber-ton Pottery Company was duly adjudged a bankrupt on or about July 15th, 1905.
These answering defendants further say by way of their first defense, that they, at the request of said Barberton Pottery Company, and without any consideration moving to them, or any of them, and solely for the accommodation of said company, signed their names upon the back of said note, and thereafter the same was delivered to said plaintiff, all of which facts hereinbefore alleged were well known to the said plaintiff. These answering defendants further say that when the said note became due and payable the same was not presented for payment at the American National Bank as provided in said note, and the said maker, the said Barberton Pottery Company, failed *75 and neglected to pay the same, and made default in payment thereof, and the said plaintiff unlawfully, carelessly and negligently failed to notify these answering defendants, or any of them, of such default in the payment of said note.
By way of a second defense they plead a certain renewal note given in lieu of the original note, by reason of which the time of payment of the original note was extended and that in taking and receiving said new note in lieu of said original note set out in the petition, no reservation was made, either expressly or otherwise, of any right of recourse against these answering defendants, or any of them, and that said renewal note was given and taken without the knowledge or consent of these answering defendants, or any of them, by reason of which they should be discharged from any liability to the plaintiff.
By way of a third defense, these answering defendants say that a third note was given in lieu of the former notes heretofore given, whereby the time of payment was extended, and the interest thereon paid by discounting said third note; that by such extension of time and by giving said third note in lieu of said other two notes, without the knowledge or consent of these answering defendants, or without any reservation whatsoever, either express or otherwise, of any right of recourse against them, that they are discharged in law from any further liability to the plaintiff bank.
By way of a fourth defense these answering defendants say that after said third note had become due, and for a good and valuable consideration, the plaintiff bank agreed with said pottery company to extend the time of payment of said third note until four months after May 16, 1905. That on said May 16, 1905, the pottery company paid the bank the interest to date upon said third note, and received the fourth note in lieu of all the other notes, but not making in said fourth note, nor in any manner whatsoever, any reservation, either express or otherwise, of any right of recourse against these answering defendants, or any of them.
These answering defendants, therefore, say, that by extending the time of payment of said indebtedness and by receiving-said last note in lieu of all the others, and without making- any reservation as aforesaid, all without their knowledge and con *76 sent, that they have been discharged from any further liability to the plaintiff upon any of said notes.
They further say that no notice of dishonor was ever served on them as to a default in any of said notes; wherefore, they pray for judgment. To these sundry defenses the plaintiff bank has demurred, and that raises the following legal questions:
First. "What is the relation of the parties defendant to the note described in plaintiff’s petition?
Second. What are their resulting liabilities and rights?
It is conceded by the parties to this controversy that the relation of the defendants to the note in question must be determined and fixed by the new negotiable instruments code, which was adopted in Ohio on April 17, 1902, and went into effect January 1, 1903; and that if said code fails to determine the relation of the parties, that then it is fixed by the law merchant as construed and applied by our courts prior to the adoption of this code.
Prior to the adoption of the code a great diversity of adjudications appeared in the different states as to the exact relation’ that an indorser in blank before delivery sustained to a promissory note. In some states such an indorser was held to be a joint maker; in others, a surety; in others, a guarantor; in others, merely an indorser.
In one of the latest cases before the Supreme Court of Ohio, the court recognizes this great variance as to the liability of an indorser as held by the supreme courts of various states in the following language of the court, as it appears on page 606 of Ewan v. The Brooks-Waterfield Co., 55 O. S., 596:
“Precisely what is the nature of the legal obligation contracted by *a stranger who indorses his name in blank on the back of a negotiable promissory note before or at the- time it takes effect, is a question upon ‘which the courts have widely differed; some holding that his obligation is that of a second indorser; others have held him liable as guarantor; and still others as a maker with the rights of a surety.’ ”
This diversity of adjudication led to a movement for a new negotiable instruments code, which should bring about greater uniformity among the states as to the liability of the parties to a negotiable instrument. In addition to Ohio, the following *77 states and territories have, within the last ten years, adopted such code: Arizona, California, Connecticut, District of Columbia, Florida, Iowa, Maryland, Massachuesets, New Jersey, New York, North Carolina, North Dakota, Oregon, Rhode Island, Pennsylvania, Tennessee, Utah, Virginia, Washington, Wisconsin, and some others.
The preamble of that code when as adopted in Ohio reads as follows: “To establish a law uniform with the laws of other states on negotiable instruments.”
What are the provisions of this code as to the relation of the parties defendant to the noté in question?
Section 3178a, Revised Statutes, provides:
“The person ‘primarily’ liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are ‘secondarily’ liable.”
And this action is under the head of “General Provisions,” showing that it must be read into all the other sections of the code.
Under the head, “Liabilities of Parties,” we have the fob lowing:
“Section 3173A, Revised Statutes. A person placing his signature upon an instrument other than as maker, drawer or acceptor is deemed to be an indorser, unless he -clearly indicates by appropriate words his intention to be bound in some other capacity. ’ ’
“Section 3173i. [Liability of Irregular Indorser], Where a person not otherwise a party to an instrument places thereon his signature in blank before delivery, he is Viable as indorser in accordance with the following rules:
“1. If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties.
“2. If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer.
“3. If he signs for the accommodation of the payee he is liable to all parties subsequent to the payee.”
“Section 31737c. [Liability of General Indorser.] Every indorser who indorses without qualification, warrants, to all subsequent holders in due course:
*78 “1. The matters and things mentioned in paragraphs numbered one, two and three of the next preceding section (which relates to genuineness of instrument, good title, and capacity of prior parties to contract).
“2. That the instrument is at the time of his indorsement valid and subsisting.
“And, in addition, he engages that on due presentment, it shall be accepted or paid or both, as the case may be, according to its tenor, and that if it be dishonored and' the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to -pay it.”
“Section 31737. [Liability of Indorser where Paper Negotiable by Delivery]. Where a person places his indorsement on an instrument negotiable by delivery he incurs all the liabilities of an indorser.”
These are all of the provisions of the code that directly bear upon the relation that one sustains to a promissory note who appears as a stranger to the instrument, signing his name upon the back thereof at the time of execution or before delivery.
In the same code, however, Section 3171p, appears a general rule of construction in case of ambiguity, as follows:
“Section 3171p. [Construction Where Instrument is Ambiguous] . Where the language of the instrument is ambiguous or there are omissions therein, the following rules of construction apply:
“6. Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser.”
From these provisions of the code, what is the relation of these answering defendants to this promissory note?
There is only one reported ease in Ohio that throws any light upon this question, to-wit, the case of Rockfield et al v. The First National Bank of Springfield, Ohio, 8 O. C. C.—N. S., 290. The syllabus of that case is as follows:
“One who places his name on the back of a promissory note before delivery is a maker or surety, and is not entitled to notice of presentment and non-payment. The act of April 17, 1902, known as ‘The Negotiable Instruments Act,’ does not change the liability of such party as established by the Supreme Court of the state for many years.”
*79 In that case the Circuit Court of Clark County affirmed the judgment of the court of common pleas, and the plaintiff in error has prosecuted his cause to the Supreme Court of Ohio, where it is now pending.
This court has read and reread and very carefully considered the oral opinion of Judge Dustin in the Rockfield ease, supra, and with much reluctance is frank to state that it does not agree with the learned judge, either in his reasoning or his conclusion, as to the relation which one sustains to a promissory note who has written his name on the back thereof before delivery.
There can be no doubt but what the law of Ohio prior to the negotiable instrument code clearly made such a person a joint maker or surety (55 O. S., 596, supra). But the obvious and manifest purpose of our code was to correct the diversity of holdings in this respect among the different states, and it is, therefore, to the code that wo must look to determine the relation the defendants sustain to the note. To this court it seems very clear that under the first section above cited (R. S., Sec. 3178ffl) the defendants are not “primarily” liable on the instrument. They are not absolutely required to pay the same by the terms of the instrument.
No rule is better established among courts than that “If the language of the statute is plain, and free from ambiguity, and expresses a single, definite and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended to convey. In other words, the statute must be interpreted literally.” Black on Interpretation of Laws, pp. 35-36, and cases cited.
But it may be claimed that the heading of Section 3173i, to-wit, “Liability of Irregular Indorser,” should be read into that section, making it distinctive, exceptional and separate from the other sections of the code that refer to indorser generally, using the terms “each,” “any” or “every” indorser.
“Headings prefixed to the titles, chapters and sections of a statute or code may be consulted in aid of the interpretation, in case of doubt or ambiguity; but inferences drawn from such headings are entitled to very little weight, and they can never *80 control the plain• terms of the enacting clauses.” Black on Interpretation of Laws, p. 181, and case cited.
What is meant by the terms of the instrument? Is it anything more than the language that appears upon its face? Is it any more than the express terms of the instrument? For if implied terms are to be read into the instrument, the courts of one state having held that the implied terms create one order of liability, such as maker; the courts of another state having-held that the implied terms create another order of liability, such as surety; the courts of another state having held that the implied terms create another order of liability, such as guarantor or indorser merely, we would have the same want of uniformity under the name of judicial interpretation or construction that prevailed in former judicial construction of the law merchant or legislative enactments. It is untenable and unreasonable to claim that a mere indorsement in blank shall add to or diminish the liability created by the terms on the face of the instrument; for if the implied terms shall control, upon which the courts of different states have placed such radically different constructions, then the new code is not only a failure, but a farce, and the same variations must continue to prevail, because it is dependent in the last analysis upon the judicial construction given to the implied terms of the instrument by virtue of so-called blank indorsements. If, however, there were any question about the secondary liability of the defendants on this instrument, it seems to the court that such doubt is removed by Sections 3173$, 31737c, 3173c and 31737c, all of which treat a person who places his signature upon the back of a note before delivery (in the same manner in which these defendants did) as an indorser; and Section 31737c, which is as general and as comprehensive as language can make it, reads:
“A person placing his signature upon an instrument otherwise than as maker, dratoer or acceptor is deemed to he an indorser, unless he clearly indicates hy appropriate words his intention to be bound in some other capacity.”
What are the appropriate words on this to show any other liability? There are no words here to indicate anything except a blank indorsement — nothing but a name.
*81 The section following, 3173i, again fixes the liability of such ,a person as an indorser, but undertakes to go no further than to determine the nature of his liability. What his rights are, what the duties of the other parties to the instrument may be with reference to him are in no wise considered in this last section, though Judge Dustin, in the case' of Rockfield et al v. First National Bank, supra, seems to read into the section the rights and duties of such indorser, when the statute undertakes to do nothing more than fix the liability, and fixes it as indorser. The same party can not, in the same instrument, have the liability of both indorser and maker or surety. He is one or the other as to the payee of the note, the plaintiff. The code has even gone further, and provides, Section 3171p: “Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser.” The circuit court above referred to evidently felt an invasion of this character upon the commercial law of Ohio must greatly disturb business affairs, and, through oversight or inadvertence, might cause very serious loss, and by reason thereof endeavored to sustain the old law regardless of whether the new code was declaratory and confirmatory of it or otheriwse.
As this court views these statutes upon the question of the liability of these defendants, they are so plain, so clear, so obvious in their terms, that there is no room for judicial construction ; and even if a court fully believed that the Legislature did not'intend to change the former law merchant in this respect, the court would not be warranted in making such a -holding.
The Supreme Court has expressly passed on just such a ease. In Woodbury v. Berry, 18 O. S., 456, the syllabus reads as follows :
“Where the words of a statute are plain, explicit, and unequivocal, a court is not warranted in departing from their obvious meaning, although from considerations arising outside of the language of the statute, it may be convinced that the Legislature, intended to enact something different from what it did in fact enact.”
The new code fixing the relation of these parties to the instrument as that of indorsers, no matter whether general in *82 dorsers or irregular indorsers, can it be said that the parties are makers or sureties? The law is presumed to be equitable, and if the burden is that of indorser, it can not be justly contended that their corresponding rights are any less than those of an indorser, but the code likewise provides for these- Section 3173o reads:
“Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place, and he is able and willing to. pay it there at maturity, and has funds there available for that purpose, such ability and willingness are equivalent to a tender of payment on his part. But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers. ’ ’
The answer in this case contains the express averment that there was no presentment made for payment 'of the note in question, either to the parties primarily or those secondarily liable.
“Section 31737c. [Liability of General Indorser.] Every indorser who indorses without qualifications, warrants, to all subsequent holders in due course:
< < q « «= *
“2. * * *
“And, in addition, he engages that on due presentment, it shall be accepted or paid or both, as the ease may be, according to its tenor, and that if it be dishonored and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent .indorser who may be compelled to pay it.”
“Section 3174gr. Except as herein otherwise provided, when a. negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser,and any drawer or indorser to whom such notice is not given is discharged.”
Clearly here the language “each indorser” and “any indorser” is as generic as language is capable of; it is comprehensive and includes any kind of an indorser.
“Section 3175/. [When Notice Need not be Given to Indorsers.] Notice of dishonor is not required to be given an indorser in either of the following eases:
“1. Where the drawee is a fictitious person, or a person not *83 having capacity to contract, and the indorser was aware of the fact at the time he indorsed the instrument.
“2. Where the indorser is the person to whom the instrument is presented for payment.
“3. Where the instrument was made or accepted for his accommodation. ’ ’
Clearly the answering defendants are not within any one of these three exceptions.
To come to any other conclusions than that the relation of the answering defendants to this note is other than that of an indorser, and that their rights are those of an indorser, would require the employment of nothing short of legal legerdemain, and do violence, under the guise of interpretation, to the plainest, clearest words of commercial English.
This view of the relation of the defendants to the instrument in question, to-wit, that of indorser, is announced and approved in the late work of Eaton & Gilbert on Commercial Paper. Attention is especially called to page 433 of that work, where the following language is employed:
“An indorsement for accommodation, like every other indorsement, is an original contract binding the indorser in favor of the holder. The relative rights and duties of such indorsers are the same as in the ease of any other instrument; and they are subject to the same obligations.”
Page 442 of the same work:
“It is a well established rule that an indorser can not be charged for the non-payment of a negotiable instrument unless presentment for payment he made to the mdlcer of the note or the acceptor of the hill. * * * Since an irregular indorser who places his signature on the instrument in blank before delivery is an indorser, a demand of payment must be made upon the maker to bind him as such indorser. A person indorsing an instrument for the accommodation of the maker of *a note can not he charged without a demand. And this is true although the indorsement was made with full knowledge of the insolvency of the maker, and for the sole purpose of giving the note credit and currency.”
After a most diligent search among the most recent decisions from the negotiable instrument code states, the court has found no case in which it has been held that an accommodation indorser is not entitled to have payment first demanded of the maker, and *84 on default to have notice of dishonor. Indeed, it seems that these states have assumed that the plain provisions of the statute made this imperative in order to charge such indorsers.
In Rouse et al v. Wooten (Supreme Court of North Carolina, decided March 20, 1906), 53 N. E., 430, the question was raised as to whether or not under the code a surety was even entitled to notice of non-payment and dishonor, the court there holding that he was not so entitled, for his liability, by the terms of the instrument, was primary. This case, in discussing primary and secondary liability, places the surety with the maker; but as to the others, such as guarantors and indorsers, treats them as having only secondary liability. The matter is not, however, logically discussed. It is assumed as one of the plain provisions of the code.
In Burgettstown Nat. Bank v. Hill, 63 Atl., 186, the same doctrine is.held as to an accommodation indorser. The question, however, in that case was as to whether or not there was a waiver of protest, it being assumed that the defendant indorser was entitled to protest. The court held that under the facts of that case he had waived his right to notice or dishonor.
In Toole v. Crafts et al (Supreme Court of Massachusetts, decided October 17, 1906), 78 N. E., 775, Judge IT-ammond, in the opinion, uses this language:
“This is a suit upon a promissory note dated June 2, 1900, signed by the defendant, IToward A. Crafts, and payable to the order of the plaintiff on demand. Before its delivery to the plaintiff and other defendant, Linus D. Crafts, who alone defends, placed his name upon the back of it. He is therefore liable only as an indorser (St. 1898, p. 502, c. 533, Sec. 63, now Revised Laws, e. 73, Sec. 80). -.No demand sufficient to charge him as an indorser ever was made upon the maker, and, if the matter had stood there, his defense would have been perfect.”
This same doctrine is announced by • Judge Hammond in a case decided a few months prior to this, Quinby v. Varmun, 76 N. E., 671.
The primary purpose of the adoption of the negotiable instrument code was to obtain uniformity of decision where before there was great diversity. The state legislatures having enacted the code in the identical language of each other, it would be unfortunate, indeed, fatal, to such uniformity if courts, under *85 the pretext of judicial interpretation or construction, were so to vary and violate the plain provisions of the code as to undo and overthrow the very purpose of the code.
Grant d? WMttemore, for plaintiff.
Geo. M. Anderson, for defendant.
The Supreme Courts of Pennsylvania and Massachusetts, as well as other states where the code is in force, .having held that an accommodation indorser was entitled to the right of notice of dishonor upon failure of payment by the makers of the note, this court, notwithstanding the holding of the Circuit Court of Clark County to the contrary, holds that in this case the defendants were entitled to have demand of payment made upon the makers, and in case of default to notice of dishonor.
It being further pleaded in the second, third and fourth defenses that there was an agreement binding upon the holder to extend the time of payment and to postpone the holder’s right to enforce the instrument without the right of recourse against the defendants being expressly reserved, the court finds that as to those defenses the demurrer should be overruled.
The demurrer, therefore, to the several defenses of the defendants is overruled and exception noted.